**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**JAMES REAUX**
**106 Brundage Lane**
**Youngsville, LA 70592**

**JONI ORAZIO**
**119 Rue Fontaine**
**Lafayette, LA 70508**

**GAVIN POLONE**
**9744 Wilshire Bl. #205,**
**Beverly Hills, CA 90212**

                    **Plaintiffs,**

**v.**

**FRANCIS S. COLLINS, in his capacity as**
**Director of THE NATIONAL**
**INSTITUTES OF HEALTH**
**Office of the General Counsel**
**National Institutes of Health**          **Civil Action No. _____**
**9000 Rockville Pike**
**Bethesda, MD 20892**

**THE NATIONAL INSTITUTES OF**
**HEALTH**
**Office of the General Counsel**
**National Institutes of Health**
**9000 Rockville Pike**
**Bethesda, MD 20892**

**KATHLEEN SEBELIUS, in her capacity as**
**Secretary of HEALTH AND HUMAN**
**SERVICES**
**200 Independence Avenue**
**Southwest  Washington, DC 20201**

**UNITED STATES DEPARTMENT OF**
**HEALTH AND HUMAN SERVICES**
**200 Independence Avenue**
**Southwest  Washington, DC 20201**

                    **Defendants.**

---

Serve: FRANCIS S. COLLINS, in his
       capacity as Director of THE
       NATIONAL INSTITUTES OF
       HEALTH
       Office of the General Counsel
       National Institutes of Health
       9000 Rockville Pike
       Bethesda, MD 20892

Serve: THE NATIONAL INSTITUTES OF
       HEALTH
       c/o Office of the General Counsel
       National Institutes of Health
       9000 Rockville Pike
       Bethesda, MD 20892

Serve: KATHLEEN SEBELIUS, in her
       capacity as Secretary of HEALTH
       AND HUMAN SERVICES
       200 Independence Avenue
       Southwest  Washington, DC 20201

Serve: UNITED STATES DEPARTMENT
       OF HEALTH AND HUMAN
       SERVICES
       200 Independence Avenue
       Southwest  Washington, DC 20201

Serve: HON. RONALD C. MACHEN JR.
       United States Attorney for the
       District of Columbia
       United States Attorney's Office
       555 4th Street, NW
       Washington, DC 20530

Serve: HON. ERIC HOLDER or his
       Designated Representative United
       States Department of Justice 950
       Pennsylvania Avenue, NW
       Washington, DC 20530-0001

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1.      Plaintiffs bring suit to enjoin the transfer of 110 government-owned chimpanzees that, no longer needed for governmental research, qualify as "surplus" chimpanzees protected by the federal CHIMP Act, and are therefore entitled to be placed in the sole approved federal sanctuary – Chimp Haven.

2.      In contravention of federal law, Defendants bowed to political pressure and chose to place the chimpanzees in an ineligible facility located in a jurisdiction desirous of the millions of dollars in federal funds accompanying the placement facility – Texas Biomed.  That Defendants' unlawful transfer decision was preordained and unconcerned with the chimpanzees' welfare is underscored by Defendants' actions in stymying and short-circuiting a working group process implemented by NIH to provide advice and recommendations concerning the placement of inactive populations of NIH-owned chimpanzees.

3.      Defendants' actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," given (i) that the CHIMP Act requires that all surplus chimpanzees be placed in the sanctuary system (see 42 USC § 283m(c)), and (ii) that Chimp Haven – the only chimpanzee sanctuary created under the CHIMP Act – exclusively complies with the CHIMP Act's operating standards for the housing of surplus chimpanzees.  (See 42 USC § 283m(d).)

4.      This Court's intervention is needed to prevent and set aside Defendants' violation of the CHIMP Act and the Administrative Procedures Act, and to ensure the surplus chimpanzees are housed in a sanctuary that – as federal law requires – offers (i) sufficiency of space; (ii) experience caring for retired chimpanzees and implementing appropriate management with expertise of end of life care; (iii) veterinary resources; and (iv) adequacy of funding.

5.      As the chimpanzees may be transferred imminently, and in no event later than August 2013, such exigencies exist as to merit the issuance of declaratory and injunctive relief.

Jurisdiction / Venue

6.      Jurisdiction is vested in this Court under 5 USC § 706, 28 USC § 1331 and 42 USC § 283m.

7.      Venue lies with this Court under 28 USC § 1391(e)(1)(A) and (B), inasmuch as Defendants reside in – and a substantial part of the events or omissions giving rise to the claims occurred in – this judicial district.

Parties

8.      Plaintiff James Reaux, LPC is a clinician in a licensed mental health practice, who has dedicated a substantial portion of his life to the welfare of chimpanzees at New Iberia Research Center ("NIRC") at the University of Louisiana at Lafayette.  Over the course of fifteen years, during which time he was a research associate and later became director of operations, Mr. Reaux worked on a daily basis with the population of chimpanzees housed at NIRC.

9.      In the course of performing his work at NIRC, which included animal husbandry and training, Mr. Reaux had frequent contact with the chimpanzees housed at NIRC.  Even with respect to the chimpanzees for which he did not have daily responsibility, Mr. Reaux would often observe them, interact with them, and feed them.

10.      Mr. Reaux has developed a particularly close attachment to many of the chimpanzees housed at NIRC, and is committed to and interested in their welfare.

11.      Mr. Reaux is troubled that some of the NIRC chimpanzees are now slated for transfer to Texas Biomed Research Institute ("Texas Biomed") in San Antonio.  Mr. Reaux is concerned that chimpanzees transferred to Texas Biomed will not be provided with the high quality, healthful environment they would enjoy if they were transferred to Chimp Haven, Inc.

("Chimp Haven") located in Keithville, Louisiana.  Mr. Reaux believes this because Chimp Haven is the only sanctuary approved by the federal government that provides for the care of the chimpanzees.

12.     Mr. Reaux is especially troubled by the difference between the treatment the chimpanzees would receive at the two institutions, as Chimp Haven offers (i) far superior enrichment techniques (including positive reinforcement techniques) for the chimpanzees to maintain their emotional and mental health; (ii) an appropriate environment (including open air and naturalistic enclosures) for the chimpanzees to engage in sufficient exercise and stimulation; and (iii) staff and caretakers with the training and philosophy necessary to maintain the chimpanzees in appropriate social groups.

13.     Should the chimpanzees be placed at Chimp Haven, Mr. Reaux will immediately begin to visit and interact with them (at first on a weekly basis), and will continue to have regular and significant contact with them in the future (likely on a monthly or bimonthly basis).

14.     Should the chimpanzees be transferred to Texas Biomed, it is unlikely that Mr. Reaux will have any further contact with the chimpanzees.  In that event, Mr. Reaux is concerned that, at Texas Biomed, the transferred chimpanzees will be (i) housed on concrete floors, which is detrimental to their bone and other health-related functions; (ii) deprived of exposure to naturalistic substrates like dirt, grass and twigs, which allow the chimpanzees to exhibit specific instinctual behaviors for foraging; (iii) without proper nesting structures and materials; and (iv) devoid of the caring support that would be offered by staff who are principally concerned with the chimpanzees' long range needs (in contrast to staff concerned principally with running a support facility for biomedical research).

15.     Plaintiff Joni Orazio, MD, DFAP is a board certified child, adolescent and adult psychiatrist practicing medicine in Lafayette, Louisiana, who is actively interested in the welfare of research animals and, specifically, of primates.  Her interests are both professional and personal.  Professionally, Dr. Orazio protests against the use of chimpanzees for medical experimentation and unethical human experimentation; believes in promoting alternatives to animal research for modern technology that is more ethical and effective than animal research; is a member of the Physician's Committee for Responsible Medicine; and believes that her profession is demeaned by the continued use of chimpanzees for medical research.  Dr. Orazio believes as a physician she has a morally mandated responsibility, not only to her patients, but to society's resources and community assets as such that relates to the efforts to establish the progress of medicine, therefore, this responsibility extends to the health and welfare of the primates at NIRC as they were used in medical research.  Dr. Orazio cites support for this position from the 1997 NIH report that states that long term care facilities are the most cost effective and best option for care of primates that are no longer needed in medical experimentation and the CHIMP Act that allows funding to facilities such as Chimp Haven.  Therefore, Chimp Haven, located in the state the primates in question currently reside, is the most responsible, fiscally sound, and ethical choice for the well being and cost of their care.  Personally, Dr. Orazio has donated funds to Chimp Haven since the sanctuary opened in 2005; maintains that that facility will inure to the benefit of the NIRC chimpanzees; and believes that their transfer to Texas Biomed will be injurious to the mental and physical health of the chimpanzees.  Should the NIRC chimpanzees be placed at Chimp Haven, Dr. Orazio intends to visit them; should they be transferred to Texas Biomed, it is unlikely that Dr. Orazio will have any contact with the chimpanzees.

16.     Plaintiff Gavin Polone is a film producer, journalist and philanthropist who is committed to the welfare of animals, including chimpanzees.  Mr. Polone has donated funds to Chimp Haven, and has personally visited – and plans to visit again – the chimpanzees placed in its facility.  He believes that placement of the NIRC chimpanzees at Chimp Haven will inure to the benefit of the chimpanzees, but that their transfer to Texas Biomed will be injurious to the mental and physical health of the chimpanzees.  Should the chimpanzees be placed at Chimp Haven, Mr. Polone intends to visit them again; should they be transferred to Texas Biomed, it is unlikely that Mr. Polone will have any further contact with the chimpanzees.

17.     All plaintiffs are collectively referred to as "Plaintiffs."

18.     Defendant Francis Collins is the director of the National Institutes of Health.

19.     Defendant National Institutes of Health ("NIH") is an agency of the United States Department of Health and Human Services, and the primary agency of the United States government responsible for biomedical and health-related research.

20.     Defendant Kathleen Sebelius is the Secretary of Health and Human Services.

21.     Defendant the United States Department of Heath and Human Services is a Cabinet department of the United States government with the goal of protecting the health of Americans and providing essential human services.

22.     All defendants are collectively referred to as "Defendants."

<u>Legal and Factual Background</u>

23.     In 2000, Congress passed and the President signed into law the Chimpanzee Health Improvement, Maintenance and Protection Act (the CHIMP Act).  (See Public Law 106-551.)

24.     The CHIMP Act required the Secretary of Health and Human Services to create a sanctuary system to provide for the permanent retirement of surplus chimpanzees.  (See 42 USC

§ 283m(b).)  Such "surplus" chimpanzees are ones no longer needed for research, after having

been used, or bred or purchased for use, in research conducted or supported by the federal

government.  (See 42 USC § 283m(a); 42 C.F.R. ¶ 9.2.)

25.     In turn, the CHIMP Act requires that all surplus chimpanzees be placed in the

sanctuary system.  (See 42 USC § 283m(c).)  This mandate fulfills the CHIMP Act's purpose to

provide a permanent lifetime sanctuary for chimpanzees designated as no longer useful or

needed in scientific research.  (See 146 Cong. Rec. S11654-01, 2000 WL 1784929.)

26.     Chimp Haven, the sanctuary system created by the Secretary, was created for the

purpose of satisfying those requirements set forth in the CHIMP Act for a facility to become a

federal chimpanzee sanctuary.

27.     Chimp Haven is the only chimpanzee sanctuary created under the CHIMP Act,

and the only chimpanzee sanctuary in compliance with the CHIMP Act's operating standards for

the housing of surplus chimpanzees.  (See 42 USC § 283m(d).)

28.     More specifically, Chimp Haven is the only sanctuary facility to date that has

provided evidence that it meets the federal requirements set forth in the CHIMP Act, and offers

(i) premier enrichment  techniques (including positive reinforcement techniques) for the

chimpanzees to maintain their emotional and mental health; (ii) an appropriate environment

(including open air and naturalistic enclosures) for the chimpanzees to engage in exercise and

stimulation; and (iii) staff and caretakers with the training and philosophy necessary to maintain

the chimpanzees in appropriate social groups.

29.     The NIRC presently houses 110 chimpanzees designated by defendant NIH

Director as "permanently ineligible for biomedical research."  This designation of these surplus

chimpanzees is synonymous with the chimpanzees having reached "permanent retirement,"

meaning they are entitled to "lifetime care" (under subsection (a)); are generally ineligible for research or euthanasia (subsection (d)(2)); may not be discharged from the system (subsection (d)(2)); and must be cared for.

30.     NIRC has elected not to reapply for an NIH award that would enable it to continue providing high-quality care for these chimpanzees.

31.     The NIH must now place the chimpanzees in another sanctuary facility that satisfies the eligibility standards mandated by federal law to enable a transfer of the chimpanzees.  Eligibility turns, among others, on factors concerning (i) sufficiency of space; (ii) experience caring for retired chimpanzees and implementing appropriate management with expertise of end of life care; (iii) veterinary resources; and (iv) adequacy of funding.

32.     The chimpanzees may be transferred imminently, and in no event later than August 2013.

33.     Chimp Haven is able and willing to accommodate the transfer to it of the chimpanzees at issue.

34.     Notwithstanding, Defendants on or about September 21, 2012 selected an ineligible facility for the transfer of the chimpanzees – Texas Biomed.

35.     Should they be placed at Texas Biomed, the chimpanzees will be (i) housed on concrete floors, which is detrimental to their bone and other health-related functions; (ii) deprived of exposure to naturalistic substrates like dirt, grass and twigs, which allow the chimpanzees to exhibit specific instinctual behaviors for foraging; (iii) without proper nesting structures and materials; and (iv) devoid of the caring support that is offered by staff who are principally concerned with the chimpanzees' long range needs (in contrast to staff concerned principally with running a support facility for biomedical research).

349674.1

36.     Patently clear from the enactment of the CHIMP Act, which acknowledged the inadequacy of then-existing facilities for the housing of surplus chimpanzees, Texas Biomed is an inadequate destination for the chimpanzees at issue here.

37.     NIH's placement decision is contrary to federal law.

38.     On information and belief, NIH's decision to place the chimpanzees with Texas Biomed was based on political lobbying intent on bringing to Texas the millions of dollars in federal funds accompanying the facility that would house the surplus chimpanzees, rather than on the welfare of the chimpanzees.

39.     In furtherance of their decision, Defendants stymied and short-circuited a working group process implemented by NIH – its "Council of Councils Working Group" – tasked with providing, *inter alia*, advice and recommendations concerning the placement of inactive populations of NIH-owned chimpanzees.

40.     On information and belief, Defendants' actions in doing so underscore that their unlawful decision to transfer the chimpanzees to Texas Biomed was preordained, and unconcerned with the chimpanzees' welfare.

41.     On or about October 1, 2012, in response to a September 21, 2012 request for reconsideration of the decision to place the chimpanzees at Texas Biomed, NIH responded that it was "open to working with any chimpanzee sanctuary (including NAPSA [North America Primate Sanctuary Alliance] members) that can successfully compete for federal funding and demonstrate that it meets the requirements of the CHIMP Act."  This response is belied by Defendants' actions, which demonstrate the placement decision was not guided by compliance with federal law.

<u>Defendants' Decision to Place the Surplus Chimpanzees with Texas Biomed Violates the APA and the CHIMP Act's Eligibility Requirements, Pursuant to Which the Chimpanzees May Only Be Placed with Chimp Haven.</u>

42.     Defendants' actions violate the Administrative Procedures Act ("APA") (see 5 USC § 706) and the CHIMP Act.  (See 42 USC § 283m.)

43.     The APA obligates this Court, "[t]o the extent necessary to decision and when presented," to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  (*Id.*)

44.     Specifically, this Court "shall – (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ."  (*Id.*)

45.     Defendants here acted in a manner "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in designating Texas Biomed as the recipient of the surplus chimpanzees, given:

    a.     that the CHIMP Act requires that all surplus chimpanzees be placed in the sanctuary system (see 42 USC § 283m(c)), and

    b.     that Chimp Haven – the only chimpanzee sanctuary created under the CHIMP Act – exclusively complies with the CHIMP Act's operating standards for the housing of surplus chimpanzees.  (See 42 USC § 283m(d).)

46.     In consequence of their violations of the APA and the CHIMP Act, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiffs pray for judgment as follows:

1.      For a declaration determining Defendants' actions to be unlawful.

2.      For a permanent injunction enjoining and setting aside Defendants' actions as unlawful.

3.      For an award of statutory attorney's fees herein incurred.

4.      For costs of suit.

5.      For such other and further relief as this Court may deem proper.


Respectfully submitted,


/s/ Adam Augustine Carter
Adam Augustine Carter
(D.C. Bar Number 437381)
888 17th Street, NW
9th Floor
Washington, DC  20006
(202) 261-2803
(202) 261-2835 (facsimile)
acarter@employmentlawgroup.com

/s/ Eric M. George
Eric M. George
(application for admission to D.D.C. pending)
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
(310) 274-7100

/s/ Ira Bibbero
Ira Bibbero
(application for admission to D.D.C. pending)
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
(310) 274-7100

*Attorneys for Plaintiffs James Reaux; Joni
    Orazio; Gavin Polone*

Dated:  November 27, 2012